**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| KURT PHILLIPS, MICHAEL MANSON, THOMAS GRAHAM, AND AUSTIN KOHL, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> BAY BRIDGE ADMINISTRATORS, LLC, <br><br> Defendant. | Case No. 1:23-CV-00022-DAE |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN**
**SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iv

MOTION AND MEMORANDUM IN SUPPORT ........................................................... 1

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 2

        A.      Factual and Procedural Background ........................................................ 2

        B.      Negotiations and Settlement .................................................................... 4

        C.      Summary of Settlement Terms ................................................................. 5

                1.      Settlement Benefits ...................................................................... 5

                2.      Scope of the Release .................................................................... 6

                3.      The Notice and Administration Plan ............................................ 6

                4.      Attorneys' Fees, Costs, Expenses, and Service Awards ............. 8

III.    ARGUMENT ........................................................................................................... 8

        A.      The Court Should Preliminarily Approve the Settlement ........................ 8

        B.      Legal Standard ......................................................................................... 8

        C.      The Proposed Settlement is Fair, Adequate and Reasonable ................. 11

                1.      The Class Representatives and Class Counsel Have Adequately
                        Represented the Class ................................................................ 11

                2.      The Proposed Class Settlement Was Negotiated at Arms' Length
                        Without Fraud or Collusion ....................................................... 12

                3.      The Settlement is Favorable Given Litigation Risks ................. 12

                4.      The Stage of Proceedings and Amount of Discovery Support
                        Settlement .................................................................................. 13

                5.      The Settlement Terms Represent a Favorable Compromise,
                        Balancing the Likelihood of Success with Attendant Risks ...... 14

6.  The Recovery is Within an Appropriate Range ..........................................15

7.  The Settlement is Supported By Experienced Class Counsel and the Proposed Class Representatives ..........................................15

8.  The Settlement Treats Settlement Class Members Equitably Relative to Each Other ..........................................15

D.  The Court Should Preliminarily Certify the Settlement Class ..............................16

1.  The Settlement Class Meets the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure ..........................................16

    (a)  Numerosity ..........................................17

    (b)  Commonality ..........................................17

    (c)  Typicality ..........................................18

    (d)  Adequacy of Representation ..........................................19

2.  The Settlement Meets the Demands of Rule 23(b)(3) ..............................20

    (a)  Common Legal and Factual Questions Predominate in This Litigation ..........................................20

    (b)  A Class Action is the Superior Means to Adjudicate Plaintiffs' Claims ..........................................21

3.  The Court Should Approve the Proposed Notice Program ..........................22

IV.  CONCLUSION ..........................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ahmad v. Old Republic Nat. Title Ins. Co.*,
690 F.3d 698 (5th Cir. 2012) ........................................................................... 20

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
No. H-17-3852, 2019 U.S. Dist. LEXIS 17652 (S.D. Tex. Jan. 30, 2019) .............................. 10

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ................................................................................ 17, 20

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .................................................................................... 20

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*,
211 F.R.D. 457 (S.D. Fla. 2002) ....................................................................... 12

*Ayers v. Thompson*,
358 F.3d 356 (5th Cir. 2004) ........................................................................... 13

*Cotter v. Checkers Drive-In Rests., Inc.*,
No. 8:19-cv-1386, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) ........................................ 13

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ......................................................................... 11, 12

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
829 F.3d 370 (5th Cir. 2016) ......................................................................... 20, 21

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ....................................................................... 15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................................................................... 22

*Gen. Tel. Co. of the Northwest, Inc. v. EEOC*,
446 U.S. 318 (1980) .................................................................................... 17

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
No. 1:17-cv-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 3, 2019) .................................... 13

*In re Citrix Data Breach Litig.*,
No. 19-61350-CIV, 2021 WL 2410651 (S.D. Fla. Jun 11, 2021) ...................................... 13, 14

*In re Corrugated Container Antitrust Litig.*,
   659 F.2d 1322 (5th Cir. 1981) ............................................ 14

*In re Deepwater Horizon—Appeals of the Econ. & Prop. Damage Class Action Settlement*,
   739 F.3d 790 (5th Cir. 2014) ................................................ 10, 17, 18, 19

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*,
   447 F. Supp. 2d 612 (E.D. La. 2006) ................................... 14

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................... 13, 14, 18, 19

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*,
   910 F. Supp. 2d 891 (E.D. La. 2012) ................................... 10

*In re Talbert*,
   347 B.R. 804 (E.D. La. 2005) .............................................. 17

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................... 18, 21

*James v. City of Dallas*,
   254 F.3d 551 (5th Cir. 2001) .............................................. 19

*Jones v. Singing River Health Servs. Found.*,
   865 F.3d 285 (5th Cir. 2017) .............................................. 19

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................. 10, 11, 15

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) .............................................. 18

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) .............................................. 17

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) .............................................. 17, 22

*Odonnell v. Harris County*,
   No. H-16-1414, 2019 U.S. Dist. LEXIS 151159 (S.D. Tex. Sep. 5, 2019) ................ 10, 16, 23

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) ............................................. 11, 15

*Purdie v. Ace Cash Express, Inc.*,
   No. 301CV1754L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ........................................ 10

*Reed v. General Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ................................................................................ 9, 10, 14

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ........................................................................................................ 19

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ........................................................................................ 10

*Valley Drug Co. v. Geneva Pharms., Inc.*,
   350 F.3d 1181 (11th Cir. 2003)..................................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................................. 17, 18

*Welsh v. Navy Fed. Credit Union*,
   No. 16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ................................. 12

## Rules

Fed. R. Civ. P. 23...........................................................................................9, 10, 11, 17
Fed. R. Civ. P. 23(a) ................................................................................................ 16, 17, 20
Fed. R. Civ. P. 23(a)(1) .................................................................................................... 17
Fed. R. Civ. P. 23(a)(2) .................................................................................................... 17
Fed. R. Civ. P. 23(a)(3) .................................................................................................... 18
Fed. R. Civ. P. 23(a)(4) .................................................................................................... 19
Fed. R. Civ. P. 23(b)(1), (2), or (3)................................................................................... 20
Fed. R. Civ. P. 23(b)(3) ............................................................................................... 20, 21
Fed. R. Civ. P. 23(b)(3)(B) ............................................................................................... 22
Fed. R. Civ. P. 23(b)(3)(C) ............................................................................................... 22
Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................... 22, 23
Fed. R. Civ. P. 23(c)(3) .................................................................................................... 23
Fed. R. Civ. P. 23(e) .................................................................................................. passim
Fed. R. Civ. P. 23(e)(1) .................................................................................................... 22
Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................... 16
Fed. R. Civ. P. 23(e)(2) .................................................................................... 8, 9, 10, 16
Fed. R. Civ. P. 23(e)(3) ...................................................................................................... 9

## Other Authorities

1 *Newberg on Class Actions* § 3.05, at 3–25 (3d ed. 1992) ................................................ 17
2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018) ...................................................... 8
*Manual for Complex Litigation*, § 21.632 ...................................................................... 17
*Newberg on Class Actions* § 13:10 (5th ed.)................................................................... 8

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Kurt Phillips, Michael Manson, Thomas Graham, and Austin Kohl ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, hereby move this Court for Preliminary Approval of a proposed class action settlement. In support thereof, Plaintiffs rely upon the accompanying Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; the Settlement Agreement ("Settlement Agreement") attached as **Exhibit 1**; the Declaration of Terence R. Coates in Support of Preliminary Approval of Class Action Settlement ("Coates Decl.") attached as **Exhibit 2**; the Declaration of Christie K. Reed from KCC Class Action Services LLC ("KCC") ("KCC Declaration") attached as **Exhibit 3**; the records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court. A Proposed Order Granting Preliminary Approval of Class Action Settlement is attached as **Exhibit 4**.

## MEMORANDUM IN SUPPORT

Plaintiffs, individually and on behalf of themselves and all others similarly situated, respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.      INTRODUCTION

Plaintiffs and the proposed Class have reached a nationwide class action settlement with Defendant Bay Bridge Administrators, LLC ("Bay Bridge" or "Defendant") for a $2,516,890 non-reversionary common fund to resolve claims arising from the September 2022 cyberattack  that impacted the highly sensitive information retained by Bay Bridge, a third-party administrator of insurance plans, for approximately 251,689 adults and children (the "Security Incident").[1] *See*

---

[1] Unless otherwise defined herein, defined terms are as set forth in the Settlement Agreement (**Ex. 1**).

Settlement Agreement; *see also* Coates Decl. ¶ 6. The Security Incident involved the access and exfiltration of names, social security numbers, dates of birth, addresses, driver's license or state identification card numbers, and protected health information (collectively "Personal Information"). Settlement Agreement ¶¶ 1.28, 1.36.

The proposed Settlement is the result of arm's length negotiations with the assistance of an experienced mediator, Jill R. Sperber, Esq. of Judicate West, and provides significant relief to the Settlement Class. Coates Decl. ¶ 6. The settlement lies well within the range of reasonableness necessary for this Court to grant preliminary approval of the class action settlement under Rule 23(e). *See* Coates Decl. ¶¶ 7-8 (including chart listing certain other recent data breach class action settlements). The Court should, therefore, preliminarily approve the settlement, preliminarily certify a Settlement Class, direct that notice be sent to all Settlement Class Members in the reasonable manner outlined below, set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and petition for the Class Representatives' Service Awards, attorneys' fees, and expenses, and set a Final Approval Hearing date.

## II.   BACKGROUND

### A.   Factual and Procedural Background

Plaintiffs brought this data privacy class action on behalf of themselves and a nationwide class of "All United States residents whose Personal Information was accessed during the Security Incident that is the subject of the Notice of Data Breach that Defendant published on or around September 5, 2022." Settlement Agreement ¶ 1.41.

This case arises from the alleged compromise of Personal Information as a result of a September 2022 cyberattack experienced by Bay Bridge. Consolidated Amended Complaint ("CAC"), Doc. 33, ¶ 39; *see also* Coates Decl. ¶ 4. Plaintiffs and Class Members include persons

whose Personal Information was stored by Bay Bridge in its role as a third-party administrator of insurance plans. CAC, Doc. 33, ¶¶ 1-3. In response to the Data Breach, beginning on or around December 29, 2022, Defendant sent a Notice of Data Security Incident to Plaintiffs and Class Members ("Notice Letter") providing a description of the type of Personal Information involved. *Id.* ¶¶ 52-53.

In response to the Data Breach, on January 6, 2023, Plaintiff Phillips, through his counsel, filed a class action lawsuit against Defendant styled *Phillips v. Bay Bridge Administrators, LLC*, No. 1:23-cv-00022. Doc. 1. Subsequent related Complaints were later filed, and on February 21, 2023, the Court entered an order consolidating the related actions. Doc. 13. On April 24, 2023, the Court also entered an Order appointing Terence R. Coates (Markovits, Stock & DeMarco, LLC) as Interim Lead Class Counsel; appointing Joe Kendall (Kendall Law Group, PLLC) as Interim Liaison/Local Counsel; and appointing Gary Mason (Mason, LLP) and Phillip J. Krzeski (Chestnut Cambronne PA) as members of Plaintiffs' Interim Executive Committee. Doc. 30.

On June 26, 2023, Plaintiffs Kurt Phillips, Michael Manson, Thomas Graham, and Austin Kohl filed the CAC, alleging individually and on behalf of the Class, that as a direct result of the Data Breach, they suffered numerous actual and concrete injuries and would likely suffer additional harm in the future. *See*, *e.g.*, CAC ¶¶ 100-149; 275-277, 284, and 305. Plaintiffs' claims for damages and remedies included the following categories of harms: (a) actual identify theft; (b) the loss of the opportunity of how their Personal Information is used; (c) the compromise, publication, and/or theft of their Personal Information; (d) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud, and/or unauthorized use of their Personal Information; (e) lost opportunity costs and the time spent associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and

continuing consequences of the Security Incident, including but not limited to efforts spent researching how to prevent, detect, context and recover from tax fraud and identity theft; (f) costs associated with placing freezes on credit reports; (g) the continued risk to their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personal Information of Plaintiffs and the Class; (h) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Security Incident for the remainder of the lives of Plaintiffs and the Class; and (i) other forms of injury and/or harm, including, but not limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic losses. *See*, *e.g.*, *id.* ¶¶ 275-276.

Plaintiffs, individually and on behalf of other members of the Classes proposed in the CAC asserted claims for Negligence (Count I), Breach of Implied Contract (Count II), Unjust Enrichment (Count III), Breach of Fiduciary Duty (Count IV), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count V), Violation of the Washington Consumer Protection Act (Count VI), and Violation of the Arizona Consumer Fraud Act (Count VII). *Id.* ¶¶ 244-334. Plaintiffs sought injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law. *Id.* at pages 78-81.

### B.    Negotiations and Settlement

This Settlement is the result of months of arm's-length negotiation and hard bargaining. Coates Decl. ¶ 7. Before entering into this Settlement Agreement, Defendant produced informal discovery confirming the class size of roughly 251,689 impacted individuals, the scope and source of the Security Incident, and Defendant's available insurance for the Security Incident. *Id.* ¶ 6.

Through the informal settlement discovery, motion practice, and the mediation process, Plaintiffs were able to properly evaluate damages on a class-wide basis. *Id.* ¶ 7. On November 28, 2023, the parties engaged in a full-day, in-person mediation session in Santa Ana, California with Jill R. Sperber, Esq. of Judicate West – a respected mediator with substantial experience with data privacy class actions. *Id.* ¶ 6. The mediation resulted in a settlement in principle. *Id.* This Settlement will resolve all claims related to the Security Incident for the Settlement Class. *See generally*, Settlement Agreement.

**C.      Summary of Settlement Terms**

Under the proposed settlement, Defendant will pay $2,516,890 to establish the Qualified Settlement Fund to be distributed under the Settlement Agreement. Settlement Agreement ¶ 1.31. The Settlement defines the Class as:

> **All United States residents whose Personal Information was accessed during the Security Incident that is the subject of the Notice of Data Breach that Defendant published on or around September 5, 2022. The Settlement Class consists of approximately 251,689 individuals.**

*Id.* ¶ 1.41. The Class specifically excludes all Persons who timely and validly request exclusion from the Class. *Id*. ¶ 6.2. The Class is comprised of approximately 251,689 individuals nationwide. Settlement Agreement ¶ 1.41. Under the Proposed Settlement, Defendant agrees to pay a total of $2,516,890 into the Qualified Settlement Fund. *Id*. ¶ 3.3. Defendants will separately and, in addition, pay fees and expenses for issuing the CAFA Notice. *Id.* ¶ 1.31. Furthermore, Bay Bridge agrees under the Settlement Agreement to implement Business Practice Changes, the cost of which shall also be borne by Bay Bridge separately from the Qualified Settlement Fund. *Id.* ¶ 3.9.

**1.      Settlement Benefits**

The Qualified Settlement Fund will provide broad relief to the Class and offer several categories of relief.  First, the Qualified Settlement Fund will be used to pay Pro Rata Cash

Payments to all Settlement Class Members who submit a valid claim. *Id.* ¶ 3.1. These payments are currently estimated to be $50.00. *Id.* In addition to the Pro Rata Cash Payment, Settlement Class Members may submit a Claim Form selecting the Out-of-Pocket Loss Option, under which they may be compensated for valid and timely claims up to a maximum amount of $5,000. *Id.* ¶¶ 3.2, 3.2(a). The Qualified Settlement Fund shall be used to pay, in the following order: (i) all Costs of Settlement Administration; (ii) Fee Award and Costs; (iii) Service Awards; (iv) approved Out-of-Pocket Loss Claims; and (v) approved Pro Rata Cash Payments. *Id.* ¶ 3.3.

Any funds that remain in the Qualified Settlement Fund for more than one hundred twenty (120) days after the distribution of Settlement Payments shall be Residual Funds, and a subsequent payment will be distributed to a Non-Profit Residual Recipient subject to Court approval. *Id.* ¶ 3.8.

### 2.      Scope of the Release

In exchange for consideration above, Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Security Incident at issue in this Litigation. *Id.* ¶¶ 1.33, 1.34, 8.1.

### 3.      The Notice and Administration Plan

Class Counsel, with Defendant's approval, has selected KCC Class Action Services LLC ("KCC") to be the Settlement Administrator, who will provide the Class with notice and administer the claims. Defendant will send a Class List listing all Settlement Class Members' names and mailing addresses, to the Settlement Administrator for the purpose of issuing Notice to the Settlement Class. Class Counsel reviewed three settlement administration proposals from three settlement administrators before selecting KCC as the appropriate settlement administrator for this case. Coates Decl. ¶12. Class Counsel's decision, with Defendant's consent, to select KCC was based on the scope of settlement administration KCC proposed balanced against the cost for such

services. *Id.* Class Counsel understands that any settlement administration costs and expenses will be deducted from the Qualified Settlement Fund, and endeavored to select a settlement administrator for this case offering the broadest services for a price favorable to the Class. *Id.*

The Settlement Administrator has reviewed and approved the proposed Notice Plan, including the Claim Form, Long Notice, and Short Notice agreed upon by the Settling Parties. Settlement Agreement, Exhs. A (Claim Form); B (Long Notice); D (Short Notice); KCC Decl. ¶¶ 8,10, 18, 19. The Settlement Administrator shall establish a Settlement Website, along with a toll-free help line. Settlement Agreement ¶¶ 5.1(f), 11.1(f)-(g); KCC Decl. ¶13-14 The Settlement Administrator shall provide the approved Notice commencing within 30 days of the entry of a Preliminary Approval Order and shall substantially complete such initial Notice within 15 days of the Notice Date. Settlement Agreement, ¶ 5.2.

The proposed Short Form Notice clearly and concisely inform Class Members of the amount of the Qualified Settlement Fund, that they may do nothing and be bound by the settlement, or may object, or may exclude themselves by completing the exclusion form, or make a claim by completing and returning a claim form and be bound by the settlement. Settlement Agreement, Ex. D. The Settlement Administrator will also publish a Long Form Notice and Claim Form on the Settlement Website established and administered by the Settlement Administrator, which shall contain information about the settlement, including copies of the notice, the Settlement Agreement, and all court documents related to the settlement. Settlement Agreement ¶ 5.2; Exs. A and B; KCC Decl. ¶ 13. The Settlement Administrator will be responsible for accounting for all of the claims made and exclusions requested, determining eligibility, and disbursing funds to Class Members. Settlement Agreement ¶ 11.1. Class Counsel, with vast experience receiving settlement administration bids in data breach class action settlements such as this one, was able to work with

KCC to receive the Settlement Administration quote for $238,865 for this case. Coates Decl. ¶ 14; *see also* KCC Decl. ¶ 17.

### 4. Attorneys' Fees, Costs, Expenses, and Service Awards

Plaintiffs will also separately seek an award of attorneys' fees not to exceed 1/3 of the Qualified Settlement Fund (*i.e.*, $838,963.33), and for reimbursement of Class Counsel's reasonable costs and litigation expenses not to exceed $30,000, which shall be paid from the Qualified Settlement Fund. Settlement Agreement ¶¶ 9.1-9.3; Coates Decl. ¶ 16. The Settlement Agreement further provides that Class Counsel will seek Class Representative Service Awards of $3,000 for each Class Representative, for a total of $12,000. Settlement Agreement ¶ 9.1.

## III. ARGUMENT

### A. The Court Should Preliminarily Approve the Settlement

Before the Settlement can be finally approved, the Settlement Class Members who will be bound by its terms must be notified and given an opportunity to object or otherwise react to the proposed Settlement. Fed. R. Civ. P. 23(e). This notification process takes time and can be expensive, so courts will generally first conduct a preliminary fairness review. *See Newberg on Class Actions* § 13:10 (5th ed.). Here, preliminary approval of the Settlement is warranted for the reasons set forth below.

### B. Legal Standard

Under the revised Rule 23(e), the question for preliminary approval is whether "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)," which provision governs final approval. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arm's-length negotiation." 2 *McLaughlin on*

*Class Actions* § 6:7 (15th ed. 2018). The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides the following factors:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A) the class representatives and class counsel have adequately represented the class;
>>
>> (B) the proposal was negotiated at arm's length;
>>
>> (C) the relief provided for the class is adequate, taking into account:
>>
>>> (i) the costs, risks, and delay of trial and appeal;
>>>
>>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Common-law criteria preceded the Rule 23 factors. In *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit identified six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and

(6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *Odonnell v. Harris County*, No. H-16-1414, 2019 U.S. Dist. LEXIS 151159, at *25-26 (S.D. Tex. Sep. 5, 2019) (citation omitted); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 U.S. Dist. LEXIS 17652, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019)); *see also* Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018 amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

"When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003). *See also In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012), *aff'd sub nom.; In re Deepwater Horizon—Appeals of the Econ. & Prop. Damage Class Action Settlement*, 739 F.3d 790 (5th Cir. 2014) ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate.); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant

circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement," "the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

Here, the foregoing Rule 23 and *Reed* factors weigh in favor of preliminary approval, as there are no grounds to doubt the fairness of the settlement.

### C.    The Proposed Settlement is Fair, Adequate and Reasonable

#### 1.    The Class Representatives and Class Counsel[2] Have Adequately Represented the Class.

It has been approximately a year since Plaintiffs filed their separate complaints, and Class Counsel have vigorously and actively represented the proposed Class, including coordinating among counsel to establish a leadership structure for Plaintiffs' counsel, filing a Consolidated Amended Complaint, engaging Defendant's counsel to discuss efficiently litigating this matter, responding to an extensive motion to dismiss, engaging in informal discovery, and—of most importance to the current motion—engaging in extensive negotiations that led to the proposed Settlement. Coates Decl. ¶¶ 6-7. The proposed Class Representatives have been active participants in this process. *Id.* ¶ 20.  Neither the Class Representatives nor Class Counsel have any conflict

---

[2] The reference to "Class Counsel" in this context includes not only Proposed Class Counsel Terence Coates but proposed Additional Class Counsel as well.

with regard to representing the proposed Class. *Id.* The adequacy of proposed Class Counsel is also demonstrated by their extensive experience, and prior success, in resolving litigation related to potential data breaches. *Id.* ¶ 19; *see also* Coordinated Plaintiffs' Motion to Appoint Interim Class Counsel, Doc. 24, at 24-1 through 24-4. All of this demonstrates adequate representation.

## 2. The Proposed Class Settlement Was Negotiated at Arm's Length Without Fraud or Collusion.

The proposed class settlement in this case was the product of rigorous, hard-fought negotiations conducted at arm's length between opposing counsel, and requiring the services of an experienced, independent mediator for ultimate resolution. Coates Decl. ¶¶ 6, 7. There has been no fraud or collusion, and there are no agreements among the Settling Parties or their counsel apart from the Settlement Agreement. *Id.* ¶ 6. "The Court may...presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at \*12 (W.D. Tex. Aug. 20, 2018).

The parties engaged in extensive negotiations before experienced mediator Jill Sperber, a Neutral for Judicate West. Coates Decl. ¶ 6. The parties exchanged lengthy mediation briefs in advance of the mediation. *Id*. After reaching an agreement in principle, the parties spent significant time apart from the mediator negotiating the specific terms and language of the Settlement Agreement. *Id.* ¶ 7.

## 3. The Settlement is Favorable Given Litigation Risks.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable

settlement is strengthened." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012); *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling now avoids the risks and burdens of potentially protracted litigation.").

Here, the parties settled this case approximately a year after Plaintiffs first sought class-wide relief. Bay Bridge during that time repeatedly denied its liability and proved it was willing and able to vigorously defend itself, including through the filing of an extensive motion to dismiss. Doc. 39. Furthermore, data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."). This case is no exception. The pursuit of nationwide claims and relief presents complex issues of law and fact. In contrast, the Settlement provides Class Members with immediate financial assistance. Coates Decl. ¶¶ 9, 19.

### 4.   The Stage of Proceedings and Amount of Discovery Support Settlement.

The next factor involves whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). "Thus, the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about

the desirability of settling the case on the terms proposed or continuing to litigate it." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006); *see also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

The information necessary to evaluate the Settlement has been obtained through public sources as well as through informal discovery. There is no dispute that a Security Incident occurred, that certain types of unencrypted Personal Information were accessed and exfiltrated, and that this occurred for approximately 251,689 Class Members. These data points alone allow for assessing the Settlement, particularly where the legal positions have been litigated in many other cases, allowing for reasoned judgment.

### 5. The Settlement Terms Represent a Favorable Compromise, Balancing the Likelihood of Success with Attendant Risks.

While Class Counsel believe Plaintiffs have a strong case on the merits, Defendants have a similarly strong belief to the contrary. There are a number of difficult factual issues involved in litigation of potential data breach issues, as well as complicated legal issues relating to causation and damages. *In re Citrix*, 2021 WL 2410651, at *3. A district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming the district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages).

14

The settlement afforded here, as compared to the uncertainty of damages even following a successful finding of liability, weighs in favor of preliminary approval. Coates Decl. ¶ 22. As discussed in the section above relating to litigation risks, the time and expense involved for all parties in resolving those issues suggests a reasonable early settlement is the wisest course for everyone concerned.

### 6. The Recovery is Within an Appropriate Range.

Class Counsel has handled over 70 cases involving data breach allegations.  Coates Decl. ¶ 21. This allows for a strong database of information on which to judge a proposed settlement. *Id.* A chart describing some of those settlements, including the proposed Settlement of this case, demonstrates that the proposed recovery is well within an appropriate range in terms of the amount recovered per Class Member. *Id.* ¶ 19.

### 7. The Settlement is Supported By Experienced Class Counsel and the Proposed Class Representatives.

As previously discussed, Class Counsel has extensive experience with class actions of this nature, and strongly supports the proposal. *See* Coates Decl. ¶ 7. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. 2d at 649 (citing *Pettway v. Am. Cast Iron Pipe Co*., 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference."). By their review and consent to the terms of the Settlement Agreement each of the proposed Class Representatives are of the same opinion.

### 8. The Settlement Treats Settlement Class Members Equitably Relative to Each Other.

The final factor, Rule 23(e)(2)(D), looks at whether Settlement Class Members are treated

equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provides for a notice plan that is designed to reach as many Settlement Class Members as possible and provides Settlement Class Members with direct mail notice of the Settlement. *See* Section II(D)(3), *infra*. It also informs Settlement Class Members of their right to object to, or opt out of, the Settlement. *Id.* Every Settlement Class Member who submits a valid claim and who attests that he or she was impacted by the Security Incident is eligible to receive a pro rata cash payment estimated to be $50, and those who can prove out-of-pocket damages are eligible to receive damages up to $5000. Settlement Agreement ¶¶ 3.1, 3.2. The Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

Each factor identified under Rule 23(e)(2) and as required by the Fifth Circuit in *Reed* is satisfied. Given the litigation risks involved and the complexity of the underlying issues, the $2,516,890 non-reversionary common fund is an excellent result. It could not have been achieved without full commitment from the proposed Class Representatives and Class Counsel. We respectfully submit that the Settlement is both fair and adequate and that it meets each of the Rule 23(e)(2) and *Reed* factors such that notice of the Settlement should be sent to the Settlement Class. *See Odonnell*, 2019 U.S. Dist. LEXIS 151159, at *38-39 (S.D. Tex. Sep. 5, 2019) (preliminarily finding the proposed consent decree and settlement agreement terms were fair, reasonable and adequate under Rule 23(e) and the governing case all where "[a]ll of the Rule 23(e)(2) and *Reed* factors weigh[ed] in favor of preliminarily approving the proposed consent decree and settlement agreement.").

### D.   The Court Should Preliminarily Certify the Settlement Class

#### 1.   The Settlement Class Meets the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure

Before assessing the parties' Settlement, the Court should first confirm that the underlying

Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation*, § 21.632. The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy—each of which is satisfied here.

### (a)   *Numerosity*

Rule 23 first requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). That said, a showing that the class consists of more than forty members "should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting 1 *Newberg on Class Actions* § 3.05, at 3–25 (3d ed. 1992)); *see In re Talbert,* 347 B.R. 804, 808-809 (E.D. La. 2005) (finding numerosity requirement met when class potentially consisted of 88 members).

Here, the numerosity requirement is easily met. The Settlement Class consists of approximately 251,689 members. *See* Settlement Agreement ¶ 1.41.

### (b)   *Commonality*

Rule 23(a)(2)'s commonality requirement demands that "there are questions of law or fact common to the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 368 (2011) (citing Fed. R. Civ. P. 23). "The principal requirement of [*Dukes*] is merely a single common contention that enables the class action 'to generate common answers apt to drive the resolution of the litigation.'" *In re Deepwater Horizon*, 739 F.3d at 811 (citing *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012)). "These 'common answers' may indeed relate to the injurious effects

experienced by the class members, but they may also relate to the defendant's injurious conduct." *Id.* Regardless, "a single common question will do." *Id.* (citing *Dukes*, 564 U.S. at 359) (emphasis added) (alterations in original).

The commonality requirement is easily satisfied here. All Settlement Class Members' claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Personal Information. Thus, common questions include, *inter alia*, whether Defendant engaged in the wrongful conduct alleged; whether Settlement Class Members' Personal Information was compromised in the Security Incident; whether Defendant owed a duty to Plaintiffs and Settlement Class Members; whether Defendant breached its duties; whether Defendant unreasonably delayed in notifying Plaintiffs and Settlement Class Members of the material facts of the Security Incident; and whether Defendant committed the common law and statutory violations alleged in the CAC. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1054 ("The common factual question in this case is what actions Heartland took before, during, and after the data breach to safeguard the Consumer Plaintiffs' financial information."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *3 (N.D. Cal. July 22, 2020) (common questions of whether defendant employed sufficient data security measures, knew of inadequacies, and timeliness of data breach disclosure satisfy commonality requirement).

### (c)     *Typicality*

Rule 23(a)(3) "requires that the named representatives' claims be typical of those of the class." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007). Here, Plaintiffs' claims are typical of Settlement Class Members' claims because they arise from the same course of alleged conduct and are premised on the same legal theory. Plaintiffs had Personal Information

that was stored on Defendant's systems that was compromised in the Security Incident, and so they suffered the same injury, were harmed by the same inadequate data security, and seek to assert the same underlying claims as the rest of the Settlement Class. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

### (d)   *Adequacy of Representation*

The Court should also easily conclude that "the representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). This requirement is satisfied when (i) there are no substantial conflicts of interest between the class representatives and the class; and (ii) the representatives and their attorneys will properly prosecute the case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 294 (5th Cir. 2017). The existence of minor conflicts of interest between the plaintiffs and the class "alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *In re Deepwater Horizon*, 739 F.3d at 813 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). Both prongs are satisfied here.

Plaintiffs adequately represent the Settlement Class, as they have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Coates Decl. ¶ 20. Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *See id.*; *In re Heartland Payment Sys., Inc. Customer*

*Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). Coates Decl. ¶ 22.

### 2.     The Settlement Class Meets the Demands of Rule 23(b)(3)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods.*, 521 U.S. at 614. Plaintiffs seek class certification under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### (a)     *Common Legal and Factual Questions Predominate in This Litigation*

Common legal and factual questions predominate in this Litigation relating to the Security Incident and related allegations. The predominance inquiry under Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012). Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of the claim is susceptible to class-wide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, it requires that common questions predominate over any questions affecting only individual class members. *Id.* "A common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (citations and quotations omitted).

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Defendant owed a duty to Plaintiffs and Settlement Class Members, whether Defendant breached its duty, and whether Defendant unreasonably delayed in notifying Plaintiffs and Settlement Class Members of the material facts of the Security Incident. These issues are subject to "class-wide proof" and "outweigh those issues that are subject to individualized proof." "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citations and quotations omitted). Courts have found similar settlement classes to meet the preponderance requirement in data breach cases. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (quotation marks omitted) (collecting cases). The Settlement Class meets the predominance requirement for settlement purposes, and certification will meet the objective of Rule 23(b)(3) to promote economy and efficiency of time, effort, and expense over separate suits.

### (b)    *A Class Action is the Superior Means to Adjudicate Plaintiffs' Claims*

The Court should find that the class action is the superior means of adjudication under Rule 23(b)(3). Each of the Rule 23(b)(3) factors, below, weigh in favor of finding superiority:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

All of these factors favor class treatment in this case. The value of each Settlement Class Members' claim is much smaller than the cost it would take to litigate individual actions. Thus, Settlement Class Members would not individually be able seek redress in this matter in an economically feasible manner. It is desirable to concentrate the litigation of the claims into the present forum in view of the scale of the class under Rule 23(b)(3)(C). With more than 250,000 class members, a class action would be superior to individual adjudication. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999) (comparing a class that would consist of hundreds, instead of millions, of members). As detailed above, this Litigation includes other consolidated actions initiated by other Settlement Class Members, which weighs in favor of class treatment under Rule 23(b)(3)(B).

### 3.      The Court Should Approve the Proposed Notice Program

Rule 23(e) requires that the Court "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable," under Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172 (1974). The proposed Notice program meets these requirements.

Here, the proposed Notice Program includes that Defendant will provide the Claims Administrator with a list of Settlement Class Members within 14 days of Preliminary Approval. *See* Settlement Agreement, Settlement Timeline. Within 30 days of Preliminary Approval, the

Settlement Administrator will begin sending the Short Notice, and will substantially complete that notice within 15 days of the Notice Date. Settlement Agreement ¶ 5.3. The Settlement Administrator will also establish a dedicated Settlement Website with the Short Notice, the Long Notice, the Claim Form, and will update that website throughout the claim period. *Id.* ¶ 5.2. A toll-free line staffed with a reasonable number of live operators will be made available to address Settlement Class Members' inquiries. *Id.*

Substantively, Rule 23(c)(2)(B) requires, and the Notice Program provides, information, written in easy-to-understand plain language, regarding: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *26 (S.D. Tex. Sept. 5, 2019). Instead, a settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Id.* (citations and quotation marks omitted).

The Short Notice defines the Settlement Class, explains all Settlement Class Members' rights, the scope and impact of Released Claims, and the applicable deadlines for submitting claims, objecting, and opting out. Further, it describes in detail the monetary relief provided by the Settlement Agreement, including the procedures for allocating and distributing the Qualified Settlement Fund amongst the Settlement Class Members, all Class Counsel, and the Settlement Administrator. Settlement Agreement, Ex. D. The Notice will also indicate the time and place of

the Final Approval Hearing, and explain the methods for objecting to, or opting out of, the Settlement. *Id.* It details the provisions for payment of Attorneys' Fees, Costs and Service Awards, and provides contact information for Settlement Class Counsel. *Id.* In light of the foregoing, the Notice Program has been designed to give the best notice practicable, is tailored to reach the Settlement Class Members, and ensures their due process rights are amply protected.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of this class action settlement including provisionally granting class certification for settlement purposes, preliminarily approving the terms of the Settlement Agreement as fair, adequate, and reasonable; preliminarily appointing Plaintiffs as the Class Representatives for settlement purposes only; preliminarily approving the Notice Program as set forth in the Settlement Agreement and set the dates for the Claims Deadline, Opt-Out Deadline, and Objection Deadline; appointing KCC as the Settlement Administrator; and approving the proposed case schedule contained in Exhibit 4.

Date: January 16, 2024                            Respectfully submitted,

                                                  */s/ Terence R. Coates*
                                                  Terence R. Coates (admitted *pro hac vice*)
                                                  **MARKOVITS, STOCK & DEMARCO, LLC**
                                                  119 East Court Street, Suite 530
                                                  Cincinnati, OH 45202
                                                  Phone: (513) 651-3700
                                                  Fax: (513) 665-0219
                                                  tcoates@msdlegal.com

                                                  *Proposed Class Counsel*

                                                  Justin C. Walker (admitted *pro hac vice*)
                                                  **MARKOVITS, STOCK & DEMARCO, LLC**
                                                  119 East Court Street, Suite 530
                                                  Cincinnati, OH 45202
                                                  Phone: (513) 651-3700

Fax: (513) 665-0219
jwalker@msdlegal.com

Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Phone:214-744-3000
Fax: 214-744-3015
jkendall@kendalllawgroup.com

Philip J. Krzeski (admitted *pro hac vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
pkrzeski@chestnutcambronne.com

Gary E. Mason (admitted *pro hac vice*)
**Mason LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Phone: (202) 429-2290
gmason@masonllp.com

Joseph M. Lyon
**THE LYON FIRM**
2754 Erie Ave.
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
jlyon@thelyonfirm.com

*Proposed Additional Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service are being served this sixteenth day of January, 2024, via the Court's CM/ECF System.

*<u>/s/ Terence R. Coates</u>*
Terence R. Coates
