## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| KURT PHILLIPS, MICHAEL MANSON, THOMAS GRAHAM, AND AUSTIN KOHL, *on behalf of themselves and all others similarly situated*,<br><br>                           Plaintiffs,<br><br>v.<br><br>BAY BRIDGE ADMINISTRATORS, LLC,<br><br>                           Defendant. | Case No. 1:23-CV-00022-DAE |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

MEMORANDUM IN SUPPORT......................................................................................1

I.     INTRODUCTION ....................................................................................................1

II.    INCORPORATION BY REFERENCE ..................................................................3

III.   SUMMARY OF SETTLEMENT TERMS ...........................................................3

      A.    The Settlement Class...................................................................................3

      B.    Settlement Benefits ....................................................................................3

      C.    Notice, Fees and Service Awards ..............................................................4

IV.   LEGAL STANDARD .............................................................................................5

V.    ARGUMENT ..........................................................................................................7

      A.    The Settlement is Fair, Reasonable, and Adequate ...................................7

           1.    Plaintiffs and Class Counsel Provided Excellent Representation...............8

           2.    The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations.........................................................................................9

           3.    The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.............................................................9

           4.    The State of Litigation and Available Discovery .....................................10

           5.    The Settlement Terms Appropriately Balance the Merits of Plaintiffs' Claims with the Likelihood of Success with the Attendant Risks...............................................................................................11

           6.    The Recovery is Within an Appropriate Range .........................................12

            7.    The Settlement is Supported by Experienced Class Counsel and the Proposed Class Representatives................................................................12

           8.    The Settlement Treats Class Members Equitably Relative to Each Other ........................................................................................................12

      B.    The Court Should Finally Certify the Settlement Class..........................13

      C.    The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process ..................13

VI.   CONCLUSION......................................................................................................15

CERTIFICATE OF SERVICE ........................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) ................................................................... 9, 10

*Billittri v. Securities America, Inc.*,
   Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ......... 14

*Burford v. Cargill, Inc.*,
   No. 05-0282, 2012 WL 5472118 (W.D. La. Nov. 8, 2012) ...................................... 8

*Cotter v. Checkers Drive-In Rests., Inc.*,
   No. 8:19-cv-1386, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) ........................... 10

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ................................................................ 7

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ........................................................... 12

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
   807 F. App'x 752 (10th Cir.) ................................................................ 14

*Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d (S.D. Tex. 2012) ..................................................... 8, 9, 10

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
   No. 1:17-cv-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 3, 2019) .................. 10

*In re Citrix Data Breach Litig.*,
   No. 19-61350-CIV, 2021 WL 2410651 (S.D. Fla. Jun 11, 2021) ........................ 10

*In re Corrugated Container Antitrust Litig.*,
   659 F.2d 1322 (5th Cir. 1981) ............................................................. 11

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) .............................................. 6, 7, 12

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ......................................................................... 13

*O'Donnell v. Harris Cnty.*,
   No. CV H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ....................... 6

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) .......................................................................... 7, 12

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................................ 13

*Purdie v. Ace Cash Express, Inc.*,
   No. Civ.A.301CV1754L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ............ 6

*Reed v. General Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ............................................................................ 6, 11

*Stott v. Capital Financial Services*,
   277 F.R.D. 316 (N.D. Tex. 2011) ....................................................................... 14

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ................................................................................ 6

*Welsh v. Navy Fed. Credit Union*,
   No. 16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .................. 9

**Rules**

Fed. R. Civ. P. 23 .................................................................................... 2, 6, 13, 15

Fed. R. Civ. P. 23(a) ..................................................................................... 13

Fed. R. Civ. P. 23(b) ..................................................................................... 13

Fed. R. Civ. P. 23(c) ..................................................................................... 14

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................... 14, 15

Fed. R. Civ. P. 23(c)(3) ................................................................................. 14

Fed. R. Civ. P. 23(e) ......................................................................... 1, 5, 7, 13

Fed. R. Civ. P. 23(e)(2) ..................................................................... 5, 6, 16

Fed. R. Civ. P. 23(e)(2)(C)(iv) ...................................................................... 6

Fed. R. Civ. P. 23(e)(2)(D) ...................................................................... 12, 13

Fed. R. Civ. P. 23(e)(3) ................................................................................. 6

Plaintiffs Kurt Phillips, Michael Manson, Thomas Graham, and Austin Kohl ("Plaintiffs"), by and through the undersigned Class Counsel,[1] submit this Unopposed Motion for Final Approval of Class Settlement and Memorandum in Support, requesting final approval of this proposed class action settlement ("Settlement") (ECF 46-1) under Fed. R. Civ. P. 23(e) on the terms set forth in the Settlement Agreement ("S.A.") (ECF 46-1). Plaintiffs rely upon the accompanying Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement; the Declaration of Terence R. Coates in Support of Final Approval of Class Action Settlement ("Coates Final Approval Decl.") attached as **Exhibit 1**; the Declaration of Settlement Administrator Regarding Notice Procedures and Settlement Administration ("Verita  Decl.")[2] attached as **Exhibit 2**; the records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court. A Proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit 3**.

## MEMORANDUM IN SUPPORT

### I.     INTRODUCTION

If approved, the Settlement will successfully resolve the claims of approximately 251,689 class members whose personal identifying information ("PII") was allegedly accessed during a September 2022 Security Incident that impacted Defendant Bay Bridge Administrators, LLC's ("Defendant") network and resulted in the unauthorized disclosure of names, Social Security numbers, dates of birth, addresses, driver's license or state identification card numbers, and protected health information ("Private Information"). *See* S.A. ¶ 1.27.

---

[1] The Court appointed Plaintiffs Kurt Phillips, Michael Manson, Thomas Graham, and Austin Kohl as the Settlement Class Representatives and appointed Terence R. Coates of Markovits, Stock & DeMarco, LLC as Class Counsel (ECF 50).

[2] KCC Class Action Services, LLC is now known as Verita Global, LLC ("Verita").

The Settlement negotiated on behalf of Plaintiffs and Class Members provided benefits to the Settlement Class through a $2,516,890 non-reversionary common fund from which Settlement Class Members were eligible to recover: (1) a pro rata cash payment, currently estimated to be in excess of $50.00, and (2) an out-of-pocket loss option for which Class Members may be compensated for valid and timely claims up to a maximum of $5,000. *Id.* ¶¶ 3.1-3.2. The Qualified Settlement Fund also covers all costs of class notice and settlement administration, attorneys' fees and costs, and Class Representative Service Awards. In addition to the benefits provided via the Qualified Settlement Fund, as part of the Settlement, Defendant has committed to remedial measures to protect the Settlement Class from future cyber-incidents at its own expense and separate from the other settlement benefits. *Id.* ¶ 3.9. This Settlement represents an excellent result for the Settlement Class and provides them with meaningful benefits to remedy the harm they have allegedly suffered, or will suffer, due to the Data Incident.

On March 26, 2024, this Court granted preliminary approval to the Settlement, finding that it is "fair, reasonable, and adequate within the range of possible approval." ECF 50, at 1. The Court-ordered notice plan has since been successfully executed and the response to the Settlement has been favorable, with only 7 persons opting out of the Settlement and no objections. *See* Verita Decl. ¶¶ 9-10. This response weighs in favor of final approval. For the reasons detailed below, Plaintiffs and the Settlement Class respectfully submit that the Settlement meets the standard for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiffs respectfully request the Court to finally approve the Settlement and enter a final judgment dismissing the case.

## II.     INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval (ECF. 46) filed on January 16, 2024, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction herewith (ECF 46-1 through ECF 46-4). Plaintiffs also incorporate by references Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 51), filed on June 10, 2024.

## III.     SUMMARY OF SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement provides for the certification of the Settlement Class defined as:

> All United States residents whose Personal Information was accessed during the Security Incident that is subject of the Notice of Data Breach that Defendant published on or around September 5, 2022. The Settlement Class consists of approximately 251,689 individuals.

SA ¶ 1.40. The Settlement excludes those who timely opt-out of the Settlement. *Id.* ¶ 6. The Court preliminarily certified the Settlement Class for settlement purposes. ECF 50.

### B.  Settlement Benefits

The Settlement establishes a $2,516,890 non-reversionary common fund from which Defendant will provide Settlement Class Members with timely benefit targeted at remediating the specific harms they claim to have suffered as a result of the Incident. The benefits of the Settlement are available to all Settlement Class Members. The Settlement provides the following benefits to all Settlement Class Members who submit a valid claim:

First, all Settlement Class Members will be eligible for a pro rata cash payment, originally estimated to be $50. SA ¶ 3.1. To the extent funds remain in the Settlement Fund after the calculation of all valid claims as well as other expenses to be paid from the Settlement Fund

(including costs of notice and settlement administration, attorneys' fees and costs, and service awards), all valid claims will be increased pro rata until the Settlement Fund is depleted. *Id*. ¶ 3.3. Based on the current claims rate in conjunction with the experience of Mr. Coates, Class Counsel expects the cash payment to have an upward deviation. *See* Coates Final Approval Decl. ¶ 7.

Second, in addition to the pro rata cash payment, Settlement Class Members may submit Claim Forms for out-of-pocket expenses up to $5,000. SA ¶ 3.2. The reimbursement of documented out-of-pocket expenses are detailed in the Long Form Notice approved by the Court at preliminary approval (ECF 50). *See* ECF 46-1, at 31.[3]

Third, separate from, and in addition to, the other Settlement Benefits described above, Defendant will undertake significant business changes to protect the data security of the Class Representatives and the Settlement Class. SA ¶ 3.9. Costs associated with these business practice changes shall be paid by Defendant separate and apart from the Settlement Fund. *Id*.

### C.  Notice, Fees, and Service Awards

The Settlement also provides that all costs of notice and settlement administration as well as attorneys' fees, costs, and service award (as approved by the Court) will be paid from the Settlement Fund. SA, ¶ 3.3. The Court approved the proposed notice program when it granted preliminary approval, and the Settlement Administrator, Verita, with the assistance of the parties, effectuated the notice program consistent with the Settlement Agreement and Preliminary Approval Order. Verita Decl. ¶¶ 2-4, 6, 7. Verita mailed notice directly to 250,889 Settlement Class Members. *Id*. ¶ 5. After re-sending undeliverable notices, following an advanced address

---

[3] These losses include, but are not limited to, any costs incurred from credit monitoring, late fees, declined payment fees, overdraft fees, unauthorized charges on credit or debit cards, and other expenses reasonably attributable to the Security Incident.

search, Verita opines that notice reached 99.6% of Class Members. *Id.* ¶ 5. This is an excellent result. Notice was also available via a dedicated settlement website. *Id.* ¶ 6.

The Notice instructed Settlement Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against the Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. *See* SA Exs. A-B. The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on June 24, 2024, and only 7 exclusion requests and 0 objections. Verita Decl. ¶¶ 9-10. The claim deadline is July 24, 2024, and currently 12,318 claims have been submitted or approximately 4.91%. Verita Decl. ¶ 8. Class Counsel will supplement the number of claims submitted at or before the Final Approval Hearing. Coates Final Approval Decl. ¶ 7.

Finally, Plaintiffs previously moved for an award of attorneys' fees of one-third of the Settlement Fund, or $838,963.33, plus reasonable expenses of $19,157.68, and service awards of $3,000 to each of the four class representatives. ECF 51.

## IV.    LEGAL STANDARD

Plaintiff brings this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides that a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members' claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treat class members equitably relative to each other.

Rule 23(e)(2).[4] These factors are consistent with the common-law criteria that preceded Rule 23. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (laying out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class Members); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *O'Donnell v. Harris Cnty.*, No. CV H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019). "When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. Civ.A.301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003); *see also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

---

[4] Here, there are no agreements between the Parties except those set forth in, or explicitly referenced in, the Settlement. Thus Rule 23(e)(2)(C)(iv) is irrelevant here.

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

## V.    ARGUMENT[5]

### A.  The Settlement is Fair, Reasonable, and Adequate

Under both Rule 23(e) factors and the Fifth Circuit's *Reed* factors, the Court should grant Plaintiffs' Motion for Final Approval of this Settlement, which provides immediate relief to 250,889 Class Members affected by Defendant's data security incident. As the Court held when it granted preliminary approval, the Settlement is "fair, adequate, and reasonable." ECF 50. Nothing has changed since preliminary approval that should alter this assessment. In fact, at the time of filing this Motion, 12,318 claims have been filed (4.91% claims rate), only seven class members submitted requests for exclusion, and no objections were received out of a class of over 250,000 class members) further supporting that the settlement is, in fact, fair, reasonable, and adequate.

---

[5] In addition to the arguments listed below, Plaintiffs incorporate by reference pp. 11-16 from Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice Plan ("Unopposed Motion for Preliminary Approval").

Coates Final Approval Decl. ¶ 5; *See Burford v. Cargill, Inc.*, No. 05-0282, 2012 WL 5472118, at *6 (W.D. La. Nov. 8, 2012) (approving a class settlement because "not a single class member objected to the settlement" and that "the existence of 2 opt-outs established that "the settlement process worked" while also showing there was not "dissatisfaction with the settlement."). For these reasons, and for the additional reasons Class Counsel will show the Court below, the Court should finally approve the Settlement.

### 1. Plaintiffs and Class Counsel Provided Excellent Representation.

Class Counsel vigorously and zealously litigated this action from its inception. *re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases").

Specifically, Class Counsel filed a Consolidated Class Action Complaint (ECF 33), briefed Defendant's Motion to Dismiss (ECF 39), engaged in informal discovery, and engaged in an extensive in person mediation with respected mediator Jill R. Sperber, Esq, where counsel for both parties travelled to Orange County, California. ("Ms. Sperber"). *See* Coates Final Approval Decl. ¶ 1; ECF 46-2, Declaration of Terence R. Coates in Support of Preliminary Approval of Class Action Settlement ("Coates Preliminary Approval Decl."), ¶¶ 5-6. Moreover, Class Representatives were active participants in the process, including the mediation that ultimately resolved this case. Coates Preliminary Approval Decl. ¶ 20. The adequacy of proposed Class Counsel is also demonstrated by his extensive experience, and prior success, in resolving litigation related to potential data breaches. Coates Preliminary Approval Decl. ¶ 2; Coates Final Approval

Decl. ¶ 12; *see also* Coordinated Plaintiffs' Motion to Appoint Interim Class Counsel, ECF 24, at 24-1 through 24-4. All of this demonstrates adequate representation.

### 2. The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations.

This Settlement is the result of a thorough investigation and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. *See* Coates Final Approval Decl. ¶ 3 There has been no fraud or collusion, and there are no agreements among the Settling Parties or their counsel apart from the Settlement Agreement. *Id.* ¶¶ 1, 11. "The Court may... presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018).

As detailed in the Unopposed Motion for Preliminary Approval (ECF 46, at 17-19), the parties were able to resolve the case only after the exchange of informal discovery and an extensive full-day mediation with Ms. Sperber.

### 3. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

"When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *In re Heartland*, 851 F. Supp. 2d at 1064; *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling now avoids the risks and burdens of potentially protracted litigation.").

The parties settled the case pending Defendant's Motion to Dismiss (ECF 39). The parties' briefing demonstrates the complexities at issue and litigation through class certification, summary judgment, trial, and if necessary, appeal would have been an onerous, difficult, and uncertain task for both parties. In contrast, the Settlement obtained provides immediate and direct relief to Class

Members now and is within the settlement range for comparable data incident settlements. *See* Coates Final Approval Decl. ¶ 2; Coates Preliminary Approval Decl. ¶ 19.

Moreover, data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."). This case is no exception. The pursuit of nationwide claims and relief presented complex issues of law and fact. These facts support that continued litigation would be time consuming and expensive and weighs in favor of final approval.

### 4. The State of Litigation and Available Discovery.

The next factor involves whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *see also In re Heartland*, 851 F. Supp. 2d at 1064 (S.D. Tex. 2012) (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

The parties were able to exchange and analyze the necessary information via public sources and through informal discovery. There is no dispute that a Security Incident occurred, that certain types of unencrypted sensitive Personal Information were accessed and exfiltrated, and that this

occurred for approximately 250,889 Class Members. Furthermore, the informal discovery addressed the critical factors relating to the sensitivity of type of data, the class size, and the extent of exfiltration of the data. This information provided sufficient basis for a reasoned assessment of the value of the Settlement, particularly where class counsel has litigated and resolved the same legal issues in state and federal courts throughout the country, and Class Counsel can identify the strengths and weaknesses of the claims and defenses presented in this case. Coates Preliminary Approval Decl. ¶ 7.

### 5. The Settlement Terms Appropriately Balance the Merits of Plaintiffs' Claims with the Likelihood of Success with the Attendant Risks.

While Class Counsel believes Plaintiffs have a strong case on the merits, Defendants have a similarly strong belief to the contrary. While it is undisputed that the data incident occurred, its is strongly disputed that the Defendant's conduct fell below any standard or that the incident contributed to any class wide harm or damages. As such, there are a number of controversial factual issues involved in this litigation, including class certification, liability, causation, and damages. Coates Final Approval Decl. ¶ 4. A district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is unknown and questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages).

Accordingly, this factor also supports approval of the Settlement.

### 6.    The Recovery is Within an Appropriate Range.

In light of the litigation risks described *supra* and the chart detailed in the Motion for Preliminary Approval (ECF 46-2, at 8-9), the proposed Settlement meets and exceeds other data incident settlements with comparable class sizes. This factor also supports final approval of the Settlement.

### 7.    The Settlement is Supported by Experienced Class Counsel and the Proposed Class Representatives.

Class Counsel has extensive experience with similar data security incident class actions, and fully endorse the Settlement. *See* Coates Final Approval Decl. ¶ 12. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co*., 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference."). Moreover, Class Representatives equally support the Settlement. Coates Final Approval Decl. ¶ 10.

### 8.    The Settlement Treats Class Members Equitably Relative to Each Other.

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provides for a notice plan that is designed to reach as many Class Members as possible and provides Class Members with direct mail notice of the Settlement. *See supra* Section III(B). It also informs Class Members of their right to object to, or opt out of, the Settlement. *Id.* Every Class Member who submits a valid claim and who attests that he or she was impacted by the Security Incident is eligible to receive up to $50, and those who can prove out-of-pocket damages are eligible to receive damages up to $5,000. SA ¶¶ 3.1, 3.2. The

Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

### B.  The Court Should Finally Certify the Settlement Class.

Settlement classes are routinely certified in consumer data breach cases. This case is no different. This Court already found when it preliminarily approved the Settlement that it likely would certify the Settlement Class. *See* ECF 50, ¶¶ 1-3.

By all measures, the Settlement Class continues to meet the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class members' claims, the Court should finally certify the Settlement Class for settlement purposes. Since preliminary approval, nothing has changed the factual predicate relative to the Rule 23(a) and pertinent Rule 23(b) factors that would disrupt the Court's previous analysis; therefore, Plaintiffs request that the Court finalize its decision, for the reasons set forth in the Plaintiffs' Preliminary Approval Motion and Supporting Memorandum. *See generally* ECF 50.

### C.  The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through

reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means.

Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). Verita mailed notice directly to 250,889 Settlement Class Members and re-issued mail notice to 293 addresses

which were previously undeliverable. Verita Decl. ¶¶ 4-5. The Short Notice provided an overview of the settlement terms, the monetary benefits available, the options available to Class Members, and the Settlement Website and toll-free number where additional settlement information could be obtained. SA Ex. D. It also contained a tear off claim form, which enabled Class Members to submit a claim directly from the short notice. After re-sending undeliverable notices following an advanced address search, Verita opines that notice reached 99.6% of the Class. Verita Decl. ¶ 5. This goes well beyond the 70-95% notice that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist & Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files /2012/NotCheck.pdf.

In addition to the direct mail notice, Verita established a dedicated website for the Settlement where relevant documents were posted for Settlement Class Members to review. *Id.* Also, Verita established a toll-free telephone number where Settlement Class Members could call and obtain additional information regarding the Settlement. *Id.* ¶ 7.

## VI.   CONCLUSION

In sum, the Settlement Administrator and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23 and satisfies due process requirements. The Notice Plan provided the best notice practicable and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines. There are no objections to the Settlement, only seven opt out requests, and 12,318 claims to date. The Class's support of the Settlement indicates that it is fair, reasonable, and adequate warranting final approval.

For the reasons set forth above, Plaintiffs request that the Court enter an order finally approving the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), certifying the Settlement Class for purposes of judgment on the Settlement, and incorporating its prior Order granting the request for attorneys' fees, expenses, and service awards.

Date: July 16, 2024                        Respectfully Submitted,

                                           */s/ Joe Kendall*
                                           Joe Kendall
                                           Texas Bar No. 11260700
                                           **KENDALL LAW GROUP, PLLC**
                                           3811 Turtle Creek Blvd., Suite 1450
                                           Dallas, Texas 75219
                                           Phone:214-744-3000
                                           Fax: 214-744-3015
                                           jkendall@kendalllawgroup.com

                                           Terence R. Coates (admitted *pro hac vice*)
                                           **MARKOVITS, STOCK & DEMARCO, LLC**
                                           119 East Court Street, Suite 530
                                           Cincinnati, OH 45202
                                           Phone: (513) 651-3700
                                           Fax: (513) 665-0219
                                           tcoates@msdlegal.com

                                           *Interim Lead Counsel*

                                           Justin C. Walker (admitted *pro hac vice*)
                                           **MARKOVITS, STOCK & DEMARCO, LLC**
                                           119 East Court Street, Suite 530
                                           Cincinnati, OH 45202
                                           Phone: (513) 651-3700
                                           Fax: (513) 665-0219
                                           jwalker@msdlegal.com

                                           Philip J. Krzeski (admitted *pro hac vice*)
                                           **CHESTNUT CAMBRONNE PA**
                                           100 Washington Avenue South, Suite 1700
                                           Minneapolis, MN 55401
                                           Phone: (612) 339-7300
                                           Fax: (612) 336-2940
                                           pkrzeski@chestnutcambronne.com

Gary E. Mason (admitted *pro hac vice*)
**Mason LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Phone: (202) 429-2290
gmason@masonllp.com

*Executive Committee Counsel*

Joseph M. Lyon
**THE LYON FIRM**
2754 Erie Ave.
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
jlyon@thelyonfirm.com

*Additional Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service are being served this 16th day of July 2024 via the Court's CM/ECF System.

*/s/ Joe Kendall*
Joe Kendall